AO 243 (Rev. 5/85)

**MOTION UNDER 28 USC § 2255 TO VACATE, SET ASIDE, OR CORRECT OFFICE**
**SENTENCE BY A PERSON IN FEDERAL CUSTODY**

FILED
IN CLERKS OFFICE

| **United States District Court** | District OF MASSACHUSETTS |
|---|---|
| Name of Movant  DEREK A. CAPOZZI | Prisoner No.  A-85156 | Case No. |
| Place of Confinement  MCI CEDAR JUNCTION | | |

U.S. DISTRICT COURT
DISTRICT OF MASS.

**05 CV 10171 PBS**

DEREK A. CAPOZZI    v.    UNITED STATES

(name under which convicted)

## MOTION

1. Name and location of court which entered the judgment of conviction under attack  DISTRICT COURT
FOR THE EASTERN DISTRICT OF MASSACHUSETTS

2. Date of judgment of conviction  SENTENCING HEARING APRIL 6, 2000

3. Length of sentence  360 MONTHS/300 W/240 CONCURENT + 60 CONSECUTIVE

4. Nature of offense involved (all counts)

COUNT ONE    18 USC § 922(G)(1) = 300 MONTHS

COUNT THREE   18 USC § 1951(a) = 240 MONTHS CONCURRENT

COUNT FOUR   18 USC § 924(C) = 60 MONTHS CONSECUTIVE

5. What was your plea? (Check one)
   (a) Not guilty    ☑
   (b) Guilty    ☐
   (c) Nolo contendere    ☐

   If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details:

   _____
   _____
   _____

6. If you pleaded not guilty, what kind of trial did you have? (Check one)
   (a) Jury    ☑
   (b) Judge only    ☐

7. Did you testify at the trial?
   Yes ☐ No ☑

8. Did you appeal from the judgment of conviction?
   Yes ☑ No ☐

MAGISTRATE JUDGE  JLA

RECEIPT #_____
AMOUNT $_____ N/A
SUMMONS ISSUED  N/A
LOCAL RULE 4.1_____
WAIVER FORM_____
MCF ISSUED_____
BY DPTY. CLK.  M.P.
DATE_____ 1/25/05

(2)

AO 243 (Rev. 5/85)

9. If you did appeal, answer the following:

(a) Name of court FIRST CIRCUIT COURT OF APPEALS

(b) Result Judgment AFFIRMED

(c) Date of result October 6, 2003    347 F3d 329

CERTIORARI denied JANUARY 26, 2004

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications or motions with respect to this judgment in any federal court?
Yes ☑ No ☐

11. If your answer to 10 was "yes," give the following information:

(a) (1) Name of court UNITED STATES SUPREME COURT

(2) Nature of proceeding PETITION FOR A WRIT OF CERTIORARI

(3) Grounds raised CONSTITUTIONALITY OF Hobbs Act
AND 4th Amendment violative SEARCH
AND SEIZURE AND INSUfficient evidence
SAME AS 347 F3d 329

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐ No ☑

(5) Result CERTIORARI denied

(6) Date of result JANUARY 26, 2004

(b) As to any second petition, application or motion give the same information:

(1) Name of court _____

(2) Nature of proceeding _____

(3) Grounds raised _____

AO 243 (Rev. 5/85)

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐ No ☐

(5) Result_____

(6) Date of result _____

(c) Did you appeal, to an appellate federal court having jurisdiction, the result of action taken on any petition, application or motion?
(1) First petition, etc.    Yes ✓ No ☐
(2) Second petition, etc.    Yes ☐ No ☐

(d) If you did not appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

12. State *concisely* every ground on which you claim that you are being held in violation of the constitution, laws or treaties of the United States. Summarize briefly the facts supporting each ground. If necessary, you may attach pages stating additional grounds and facts supporting same.

CAUTION: If you fail to set forth all ground in this motion, you may be barred from presenting additional grounds at a later date.

For your information, the following is a list of the most frequently raised grounds for relief in these proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you have other than those listed. However, you should raise in this motion all available grounds (relating to this conviction) on which you based your allegations that you are being held in custody unlawfully.

Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. The motion will be returned to you if you merely check (a) through (j) or any one of the grounds.

(a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily or with understanding of the nature of the charge and the consequences of the plea.
(b) Conviction obtained by use of coerced confession.

AO 243 (Rev. 5/85)

(c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.
(d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.
(e) Conviction obtained by a violation of the privilege against self-incrimination.
(f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.
(g) Conviction obtained by a violation of the protection against double jeopardy.
(h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impanelled.
(i) Denial of effective assistance of counsel.
(j) Denial of right of appeal.

A. Ground one: _____ SEE ATTACHED GROUND ONE _____

_____

Supporting FACTS (state *briefly* without citing cases or law) _____

_____

SEE ATTACHED GROUND ONE SUPPORTING FACTS

_____

_____

_____

_____

B. Ground two: _____ SEE ATTACHED GROUND TWO _____

_____

Supporting FACTS (state *briefly* without citing cases or law): _____

_____

SEE ATTACHED GROUND TWO FACTS

_____

_____

_____

C. Ground three: _____ SEE ATTACHED GROUND THREE _____

_____

Supporting FACTS (state *briefly* without citing cases or law): _____

_____

SEE ATTACHED GROUND THREE FACTS

_____

_____

_____

12A)GROUND ONE:AN EVIDENTIARY HEARING SHALL SHOW PETITIONER WAS
NOT PROPERLY PREPARED TO TESTIFY BY TWO DEFENSE ATTORNEYS,
AND UNLAWFULLY INTIMIDATED,OR COERCED,OR INFLUENCED BY MIS-
REPRESENTATION, NOT TO TESTIFY IN VIOLATION OF PETITIONER'S
FUNDAMENTAL RIGHT TO TESTIFY n.1/ AND THE RIGHT TO EFFECTIVE
ASSISTANCE OF COUNSEL n.2/ GUARANTEED BY THE FIFTH AND SIXTH
AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES:

FACTS SUPPORTING GROUND ONE:

Neither initial attorney, Matthew Kamholtz, nor trial
attorney Peter B. Krupp ever properly prepared the defendant to
testify. Both lawyers failed to go over a long list of direct
examination questions with the defendant and never role-played
a prosecuter doing mock cross-examination at any time they visited
with the defendant or saw the defendant in courthouse holding
cells. I have never been prepared to testify in any other criminal
case by any other defense attorney.

The defendant incorporates herein by reference, paragraphs
8 and 9 of his attached affidavit in support of Ground One and he
requests this court to allow him to testify and require attorney's
Kamholtz and Krupp to testify at an evidentiary hearing to fully
develop the record. Had The defendant not been coerced into not

n.1/  Rock v. Arkansas, 483 U.S. 44 (1987); United States v. Butts,
630 F.Supp 1145, 1147-48(D.ME 1986); United States v. DiSalvo, 726
F.Supp 596, 605 (ED PA 1989); Martinez v. Ylst, 951 F2d 1153, 1155-
1157 (9th Cir 1991); Campos v. United States, 930 F.Supp 787, 790-
792 (EDNY 1996); Gallego v. United States, 174 F.3d 1196, 1198 (11th
Cir 1999); State v. Hampton, 818 So.2d 720, 726-29 (2002); United
States v. Frappier, 615 F.Supp 51, 53 (D.Mass 1985).
n.2/  Contrast DeLuca v. Lord, 858 F.Supp 1330, 1335 n.4, 1352-1361
(SDNY 1994); with Epsom v. Hall, 330 F3d 49, 55 (1st Cir. 2003) and
Paradise v. DuBois, 188 F.Supp 2d 4, 9 (D.Mass 2001).

testifying (as set out in affidavit paragraphs 8 and 9) and
had the defendant been properly prepared to testify, he would
have truthfully contradicted material facts the government's
main witnesses falsely testified to [for example --1) defendant
would have testified to facts set forth in his affidavit, as well
as having testified that, a) Jason Stone did not ever give the
defendant a .357 magnum firearm revolver, b) the defendant did
not use a .357 magnum revolver to threaten, intimidate or extort
Michael McGrath at his place of business, c) the defendant did
not pass Jason Stone any .357 magnum firearm at the victims' car
lot during the extortion attempt alleged, d) that Jason Stone
was both friends with and criminally involved with the alleged
victim (Michael McGrath) and the victims nephew (also Michael
McGrath), e) that it was no coincidence that Jason Stone had
been alleged to have purchased the .357 magnum from the nephew
of the alleged victim's nephew (yet no claimed association
between the victim, the victim's nephew and Stone was alleged to
have existed), f) that the investigating government agents in
the case had been following the defendant, harassing him, and
also folowing and harrassing friends and relatives of the defendant
and the defendants' friends' relatives as well, g) that these
agents had been telling people known to the defendant that the
defendant had "information" about the alleged whereabouts of the
remains of a deceased government witness' body, h) that agents
had previously attempted to interview the defendant under a false
premise that the defendant had an "attorney visit" at a county
jail and had threatened the defendant when he refused to speak
to them, i) that the agents had stated that they were going to

"get" the defendant "one way or another", j) and that they would "turn" the defendant's friends against him when they got them all too.]

The defendant requests a Habeas Rule 8(c) assignment of counsel to properly prepare him to testify at an evidentiary hearing and to communicate with prior defense counsel, Matthew Kamholtz and Peter B. Krupp, to obtain their affidavits.

The defendant did not voluntarily or knowingly waive his right to testify and would have testified if attorney Krupp did not coerce him into not testifying as set out in paragraphs 8 and 9 of his affidavit.

An evidentiary hearing is also necessary to explore facts attorney Krupp claimed to know,[3/], or otherwise relied upon, when Krupp refused to prepare petitioner to testify and refused to ask petitioner any questions should petitioner take the stand in his defense, see SJC Rule 3:07 Ethical Sub-Rule 3.3(e) applicable thru Local D.Mass Rule 83.6(4)(B). This misrepresentation intimidated the petitioner, adversely influenced him and coerced him into not testifying in his defense thereby involuntarily waiving his Constitutional Right to testify.

---

[3/]    Mitchell v. Hall, 04-10539-RGS (10/27/04 Cohen, MJ); Comm v. Mitchell, 438 Mass 535, 781 NE2d 1237 (2003) citing United States v. Del Carpio-Cotrina, 733 F.Supp 95, 99 (SD Fla 1990) ("Actual Knowledge" standard to support a firm factual basis). Also see US Ex Rel Wilcox v. Johnson, 555 F2d 115, 120-122 (3rd Cir 1997) (An "attorney may not volunteer a mere unsubstantiated opinion that his clients protestations of innocence are perjured").

12B) GROUND TWO: CONSIDERED IN A CUMULATIVE ERROR ANALYSIS WITH
     GROUND ONE AND GROUND THREE, HABEAS RULE 6 DISCOVERY AND A
     FULL RULE 8 EVIDENTIARY HEARING SHALL SHOW ATTORNEY KRUPP'S
     COMPLETE FAILURE TO INVESTIGATE, INTERVIEW-PREPARE AND SUBPOENA
     WITNESSES AND DOCUMENTS, TO SUPPORT A REASONABLE DOUBT DEFENSE
     CONCERNING ANY ACTUAL OR POTENTIAL DE MINIMUS EFFECT  ON
     COMMERCE, COMBINED WITH KRUPP'S INEXPLICABLE NON-STRATEGIC
     TOTAL FAILURE TO CROSS-EXAMINE n.4/ TWO MAIN GOVERNMENT WITNESSES
     ABOUT THE ABSENCE OF ANY ACTUAL OR POTENTIAL DEPLETION OF
     BUSINESS ASSETS,OR OUT-OF-STATE COMMERCE CONNECTIONS,VIOLATED
     PETITIONER'S RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL n.5/
     GUARANTEED BY THE SIXTH AMENDMENT TO UNITED STATES CONSTITUTION

FACTS SUPPORTING GROUND TWO:

    Attorney Peter Krupp did not move for discovery of, or serve

the Department of Justice with a subpoena for, 1980 thru 2000

prosecution records on the total number of Hobbs Act indictments

as well as Hobbs Act convictions that involved used car refund

transactions affecting commerce. Had defense counsel done so, he

would have obtained evidence of no such indictments or convictions

in the preceeding twenty-years [as responses to this courts allow-

ance of Habeas Rule 6 discovery should show]. Attorney Krupp did

not utilize Westlaw or Lexis/Nexus computer research techniques

---

n.4/ FISHER V. GIBSON,282 F3d 1283,1295,1297(Assertion that trial
counsel "was deficient for failing to cross-examine Mr.Johnson
on that issue" which Court agreed to being deficient performance
finding cumulative error prejudice 282 F3d at  1307-1311);DIXON
V. SNYDER,266 F3d 693,699-705(7th Cir 2001).

n.5/ UNITED STATES V. MOORE,554 F2d 1086,1093(DC Cir 1976)("Counsel's
anticipation of what a potential witness would say does not excuse
the failure to find out");PORCARO V. UNITED STATES784 F2d 38,40 n.2
41(1st Cir 1986)(28 USC § 2255 reversed dismissal and remanded for
hearing after documents and affidavits were obtained from witnesses
and business sources,noting Petitioner's summary affidavit was itself
sufficient to preclude dismissal of petition on counsel's failure
to obtain related business records and present financial-type defense);
PAVEL V. HOLLINS,261 F3d 210,219-229(2nd Cir 2001);UNITED STATES V.
GRAY,878 F2d 702,711-712(3rd Cir 1989)("Ineffeciveness is generally
clear in the context on a complete failure to investigate because
counsel can hardly be said to have made a strategic choice against
pursuing a certain line of investigation when he has not yet obtained
the facts on which such a decision can be made");GRIFFIN V. WARDEN,
MARYLAND CORRECTIONAL ADJUSTMENT CENTER,970 F2d 1355,1358(4th Cir
1992)("The 'deficient  performance' prong is easily met here. An
Attorney's failure to present available exculpatory evidence is
ordinarily deficient");MOORE V. JOHNSON,194 F3d 586,616(5th Cir 1999)
("Strategic decisions made without an adequate investigation into

FOOTNOTE  CONTINUED OVERLEAF---------------

—8—

to investigate the absence of used car refund transaction

decisions which indicated the government's pre-2000 inability

to convict anyone of such an absurd theory of Hobbs Act

violation, nor did Krupp do legal research on depletion of

assets defenses reported in decisional law [as trial counsel

is expected to admit at the Habeas Rule 8 evidentiary hearing

in this case and as corroborated by Krupp's pre-trial notes

petitioner shall file a Rule 6 motion to produce].

Attorney Krupp had no strategic reason for failing to serve

Michael McGrath and Gardner Park Auto Sales with Fed.Crim.P.

Rule 17(c) subpoena's for 1996-1997 and February 1998 personal

business financial records related to out of state purchases

of motor vehicles, sales patterns between buying trips or orders

, reserve financial account balances exceeding \$5,000.$\frac{00}{}$,

pattern of refunds below \$5,000.$\frac{00}{}$ and excess fund balances

following any prior refund with Michael McGrath's net personal

worth, or liquid assets, and cash reserves, on February 18, 1998.

Petitioner expects the scope and specificity of financial

FOOTNOTE FIVE CONTINUED/ the facts and law controlling plausible
defense theories are reasonable only to the extent that reasonable
professional judment supports counsel's limitation on the investig-
ation" citing STRICKLAND V. WASHINGTON);WORKMAN V. TATE,957 F2d 1339,
1345(6th Cir 1992)("Where counsel fails to investigate and inter-
view promising witnesses,and therefore has no reason to believe
they would not be valuable in securing defendant's release,counsel's
inaction constitutes negligence,not trial strategy");DAVIS V.
LAMBERT,388 F3d 1052,1063(7th Cir 2004)(Collecting cases;noting
Counsel's "failure to try to ascertain what exculpatory evidence
new witnesses might have were flagrant examples of ineffective
assistance");CHAMBERS V. ARMONTROUT,907 F2d 825,831832(8th Cir 1990)
(Non-strategic omission prejudicial where evidence not presented
would have directly contradicted governments case and defense counsel
"attempted to use a defense that lacked evidentiary support");
TURNER V. DUNCAN,158 F3d 449(Counsel's "failure to adequately con-
sult with his client and prepare his client to testify did not meet
the standard of competent representation");FISHER V. GIBSON,
283 F3d 1283,1293-1298(10th Cir 2002);CARGLE V. MULLEN,317 F3d 1196
(10th Cir 2003);TROEDELL V. WAINWRIGHT,667 F.Supp 1456,1460-1463
(SD Fla 1986)grant of writ affirmed,828 F2d 670(11th Cir 1987)

records shall be amended following Habeas Rule 6 discovery

subpoena production of the foregoing records and bank records

of Michael McGrath and Gardner Park Auto Sales for 1996 thru 1998.

To the extent AUSA's may have had actual or constructive

possession, control or knowledge of such exculpatory financial

records, petitioner ghost pleads[n.6/] future amendment of a <u>Brady</u>

claim should the Rule 6 discovery subpoena's to AUSA's, the

FBI and ATF result in production of financial records which

were not provided prior to or during the trials in this case.

Attorney Krupp had no strategic reason for failing to seek

and obtain CJA funds to retain a forensic financial records

expert knowledgable in interstate commerce as well as buying and

selling patterns[n.7/]; and, in relation thereto attorney Krupp

---

**n.6/**  Based on the likelihood that an adequate government investi-
gation would include a search for exculpatory evidence the United
States Supreme Court recognized appropriate <u>pro se</u> ghost pleading
in <u>Banks v. Dretke</u>, 124 S.Ct. 1256, 1267-1279(2004) subject to
later Habeas Rule 6 and Rule 8 production and filing of concealed
records, <u>id</u>.
**n.7/**  Post-trial expert funds should now be allowed and an eviden-
tiary hearing held at which such expert may testify, <u>Phoenix v.
Matesanz</u>, 189 F3d 20, 27-28 (1st Cir. 1999); <u>Porcaro v. United States</u>,
784 F2d 38, 41 (1st Cir. 1986) because the failure to obtain pre-
trial funds for, or otherwise obtain the services of, a defense
expert is a strong ground for granting a new trial, <u>Genis v. Pepe</u>,
50 F3d 59, 60-61 (1st Cir. 1995); <u>Sims v. Livesay</u>, 970 F2d 1575,
1577-1581 (6th Cir. 1992); <u>Commonwealth v. Haggerty</u>, 400 Mass 437,
440-441 (1987) and may be considered in a cumulative error
analysis, <u>Fisher v. Gibson</u>, 282 F3d 1283, 1309 (10th Cir. 2002).

is expected to admit at the evidentiary hearing that his failure
to subpoena 1996 thru 1998 records was the reason he did not
seek a defense expert to analyze such records. Had attorney
Krupp obtained the necessary defense expert, it is likely such
expert would have been able to testify that McGrath's buying,
or selling, pattern time span and excess reserve finances or
cash negated any minor refunded $4,000.$^{oo}$ depletion of assets
effecting commerce and that it was likely the returned motor
vehicle would have been resold prior to any future out-of-state
purchasing trip [as such expert is expected to testify at the
evidentiary hearing].

     Similarly, attorney Krupp's failure to subpoena 1996 thru
1998 financial records is expected to be the reason for defense
counsel's non-strategic failure to cross-examine Michael McGrath
(Tr.2:47-114; 3:9-24) and Carlo Fakri (3:47-70, 77-78) concerning
financial details, out-of-state buying trip time-span patterns,
frequency of resales of motor vehicles or returned vehicles,
excess reserve personal and business finances, as well as
February 18, 1998 bank balances, cash-on-hand or concealed cash
and liquid assets, id., all of which was relevant and material
to creating a defense of reasonable doubt concerning any actual
or potential de minimus affect on commerce.

     Furthermore, in relation to and combined with Ground One,
attorney Krupp's failure to adequately communicate with the
petitioner prior to trial [see attached Capozzi affidavit pgh.'s
3, 4, 5, 6 and 7] and Ground One failure to prepare petitioner
to testify [Capozzi affidavit phh.'s 8 & 9 and Ground One facts
incorporated herein], attorney Krupp had no strategic reason
for failing to explain the elements of charged 18 USC § 1951,

and 18 USC § 922(g) and 924(c) to petitioner [Capozzi affidavit pgh.'s 3 & 12] and had petitioner been properly prepared to testify he would have testified to contradict government witnesses (see Ground One, supra) and as set out in pgh.'s 13, 14 and 15 of his attached affidavit, id.

Prior to the trial in this case attorney Krupp also committed the non-strategic error of failing to investigate or contact all financial institutions related to Michael McGrath and Gardner Park Auto Sales, or interview, prepare to testify and subpoena any financial excess assets or buying and sales pattern defense witnesses, as verified by Krupp's inability to specify any evidence or witnesses supporting the no real or potential effect on commerce defense in his opening statement (see separate tr. 2:51-56) and Krupp's very weak, unsupported, insufficient depletion of assets closing argument (tr.9:44).

Attorney Krupp had no strategic reason for failing to interview, prepare to testify and subpoena Jason Stone's best friend Mark Lessor who could have impeached Stone in several areas of credibility, including but not limited to Stone's false denials of other crimes [tr.4:134-145] and Stone telling Mark Lessor he heard voices [tr.4:125], and reputation in the community for untruthfulness.

Attorney Krupp had no strategic reason for failing to interview, prepare to testify and subpoena Dawn Pearson to impeach Jason Stone in several areas, including but not limited to Stone telling her that he heard voices [tr.4:125], telling her that he committed other crimes [tr.4:134-145] and reputation in the

—12—

community for untruthfulness.

Attorney Krupp had no strategic reason for failing to interv-
iew, prepare to testify and subpoena Jason Stone's mother,
Shiela Hinchy, to impeach Stone's false testimony that Michael
McGrath came to his mothers house to sell him the .357 magnum
firearm [tr.3:139] and Jason Stone's pattern of lying beginning
in childhood and continuing through 1998, his severe drug
addiction problem (which he tried to limit in his testimony) and
his reputation for untruthfulness in the community. Stone's
mother also may have provided information on cooperation
agreement negotiation conversations she had engaged in with
both Stone and ATF agent John Mercer and other motives for Stone
to lie.

Attorney Krupp had no strategic reason for failing to
interview, prepare to testify and subpoena Jason Stone's sister
Heather Stone to impeach Stone's testimony as to his pattern
of committing criminal offenses against victims and then filing
false complaints against those victims accusing them of the
crime in order to get criminal complaints filed against himself
dismissed, (Stone and his sister were caught on tape discussing
this "trick" so that she could use it against a person she
was to have a physical altercation with). Stone's sister would
have severely cripled his credibility by her testimony of his
lying throughout his childhood up until 1998, his severe drug
problem (which he tried to limit in his testimony) and his
reputation for lying in the community and untruthfulness.

Attorney Krupp had no strategic reason for failing to locate,
interview, prepare to testify and subpoena many dissatisfied

$-/3-$

Gardner Park Auto Sales 1996 thru 1998 customers of Michael
McGrath to testify in court to McGrath's reputation for
untruthfulness [which was also relevant to 18 USC §922(g) &
18 USC § 924(c) firearm counts one and four  as well as count
three]. Attorney Krupp is expected to admit at the evidentiary
hearing that his failure to subpoena Gardner Park Auto Sales
1996 thru 1998 records prevented him from learning the names and
addresses of such potentially favorable witnesses to the defense.

    Absent attorney Krupp's foregoing non-strategic errors, had
a full defense been presented, the result of the verdict on count
three would have been not guilty and there is a reasonable probab-
ility/likelihhod that the result of the proceedings on counts
one and/or four would have been favorably different [contrast
October 2004 not guilty firearms verdicts, and Hobbs Act hung
jury in United States v. Capozzi, 01-10373-RWZ where jurors
rejected Jason Stone's, and other witnesses, testimony].

    With respect to Michael A. McGrath falsely testifying
about claimed source of .357 magnum firearm,or persons involved
with such firearm(who were not interviewed by ATF or charged in
relation thereto,or whose statements were not disclosed by ATF),
§ 2255 habeas counsel needs to interview Jared_____(LNU) and
Kelly McCarthy who McGrath claimed had the .357 magnum and who
would have had inconsistant statements, because Atty Krupp had
no strategic reason for failing to interview,prepare to testify
and summons defense witnesses Kelly McCarthy and Jared____(LNU)
(Tr. 7:73).

—/4—

12C) <u>GROUND THREE</u> IN COMBINATION WITH GROUND ONE
AND GROUND TWO, PETITIONERS RIGHTS TO A
FUNDAMENTALLY FAIR TRIAL BY JURY, THE EFFECTIVE
ASSISTANCE OF TRIAL AND DIRECT APPEAL COUNSEL,
GUARANTEED BY THE FIFTH AND SIXTH AMENDMENTS
TO THE UNITED STATES CONSTITUTION WERE VIOLATED
BY MULTIPLE PREJUDICIAL JURY INSTRUCTIONS AND
RELATED ERRORS WHICH TRIAL COUNSEL HAD NO
STRATEGIC REASON FOR FAILING TO OBJECT TO AFTER
THE CHARGE AND DIRECT APPEAL COUNSEL HAD NO
STRATEGIC REASON FOR FAILING TO BRIEF WITH
<u>INEFFECTIVE TRIAL COUNSEL ISSUES</u>:

<u>FACTS SUPPORTING GROUND THREE</u>:

Trial counsel's failure to object to[n.8/], and appellate counsel's failure to brief[n.9/] the following issues requires such attorneys to testify at an evidentiary hearing on Ground Three[n.10/]

---

[n.8/] <u>Cox v. Donnelly</u>, 267 F.Supp2d 418, 421-425(EDNY 2003); <u>Gray v. Lynn</u>, 6 F3d 263, 269-270 (5th Cir. 1993); <u>Oyola v. Boles</u>, 947 F2d 928, 930-935 (11th Cir. 1991); <u>Kubat v. Theiret</u>, 867 F2d 351, 371 (7th Cir. 1989); <u>Corsa v. Anderson</u>, 443 F.Supp 176, 178 (MDPA 1976).
[n.9/] <u>Roe v. Delo</u>, 160 F3d 416, 418-420 (8th Cir. 1998); <u>Lucas v. O'Dea</u>, 179 F3d 408, 416-420 (6th Cir. 1999); <u>Mapes v. Tate</u>, 388 F3d 187, 189-193 (6th Cir. 2004). Also see <u>United States v. Shea/ McDonald/O'Halloran/Burke/McGonagle</u>, First Circuit #'s 02-2241 et. al., -# 03-1055 pending decision for two years on ineffective assistance appellate counsel issue related to trial jury instruct- ion issues, <u>id</u>.
[n.10/] <u>Mapes v. Coyle</u>, 171 F3d 408, 427-429 (6th Cir. 1999).

The interrelated issues include, but are not limited to, the following sub-grounds subject to CJA assigned counsel's filing of an amended habeas petition, and expanding of the following statement of supporting facts:

a)**The Count Two Indictment Going To The Jury**:

Star government witness Jason Stone repeatedly testified specifically about a .357 magnum (tr.3:138-141; 4:18,48,69-70) he identified (tr.4:19-20) and that his guilty plea and sentence involved Judge Saris (tr.4:51) on count two (tr.4:69-70). Count one of the indictment against Derek Capozzi for possessing a "Ruger, Security Six Model, .357 magnum Revolver bearing serial number 153-37768" uses identical language as count two of the indictment against Jason Stone for an 18 USC § 922(g)(1) violation. In closing argument the prosecutor focused on the .357 magnum in relation to both Jason Stone and Derek Capozzi (tr.9:71) on February 18, 1998 in the Peabody used car dealership, which also mirrored the language of indictment counts one and two. The overall extensive extensive defense brought out through cross-examination of government witnesses throughout the trial was one of police, or someone planting the firearm and misidentification by Stone of the recovered firearm. This was focused on in defense closing argument which also challenged Jason Stone's credibility (tr.9: 47-62) and trial Judge Saris instructed on the possibility of an honestly mistaken identification of the firearm (tr.9:107-110). The combination of trial evidence, closing arguments and misident- ification jury instructions placed the identification and possession of the specific serial numbered 153-37768, "Ruger Secu- rity Six .357 magnum revolver on February 18, 1998 as the most

-16-

highly disputed fact and central issue in the case, related to the credibility of Jason Stone.

Plea and sentencing Judge Saris became a de facto witness against the petitioner[n.11], giving the appearance of Judicial approval[n.12] of, or credibility vouching for,[n.13], Jason Stone's Fed.Evid.Rule 803(22) purpose violative guilty plea to count two[n.14], When Judge Saris acted like an additional prosecutor introducing the count two extrinsic indictment into the proceedings after the

---

[n.11] Similar to a prosecution's leading questions violating the Confrontation Clause, Robbins v. Small, 371 F2d 793 (1st Cir. 1969) or trial by documents not subject to cross-examination violating the Sixth Amendment.
[n.12] Mattorney v. Wallman, 912 F2d 469, 473 n.4 (10th Cir. 1990).
[n.13] United States v. Sorondo, 845 F2d 945, 949 (11th Cir. 1988); Bissaccia v. Attorney General, 623 F2d 307, 312-313 (3rd Cir. 1980); United States v. Aldaco, 564 F2d 706, 707 (5th Cir. 1977).
[n.14] In addition to a codefendant's guilty plea violating the Confrontation Clause of the Sixth Amendment Bissaccia, supra, it also violates the Due Process Clause of the Fifth Amendment, United States v. Kroh, 896 F2d 1524 (8th Cir. 1990); United States v. Little Boy, 578 F2d 211 (8th Cir.1978); United States v. Baez, 703 F2d 453 (8th Cir. 1983); Kirby v. United States, 174 US 47, 55 (1899); Commonwealth v. Tilley, 327 Mass 540, 548 (1951); Commonwealth v. Santiago, 425 Mass 491, 504 (1997).

close of evidence, by instructing jurors:

> "Now, the indictment in this case against Mr. Capozzi
> with counts, counts one, three and four. And <u>as you'll
> notice, count two--you'll see it because I kept it in
> there. It's a count against Mr. Stone</u>"
> (tr.9:102)

Attorney Krupp did not request an instruction that an indict-
ment is not evidence or for the jury to disregard the count two
indictment and guilty plea of Jason Stone<u>n.15/</u>. Judge Saris did
not give such curative limiting instructions (tr.9:84-96) and
attorney Krupp had no strategic reason for not objecting to the
absence of such instructions after she completed charging the
jury (tr.9:126-127).

Attorney Krupp also had no strategic reason for failing to
object to the extrinsic firearm identification bolstering and Jason
Stone credibility vouching indictment count two being given to the
jury for a reminder during deliberations through a personalized
jury instruction (tr.9:102) because the confusing objection collo-
quy after closing arguments (tr.9:72-73) followed repeated strong
objections by attorney Krupp to the court's proposal to send
count two of the indictment into the jury room (x-11/12/99
charge conference tr. pages 21-23; 11/15/99 tr.9:7-8), which
Judge Saris overruled by stating "I think I'm going to hand it
to them. It's my practice... It's left in Stone" (tr.9:8).
Attorney Krupp should have known to object after the jury
instructions to fully preserve this issue for appeal because
Judge Saris forewarned him by stating "Let me make it clear, as
I know you both know, that--particularly Mr. Krupp knows, if
you have any objections to these instructions, anything we say
here, you have to say again at the close of the charge. It won't
preserve it" (x-11/12/98 tr.pg.2).

<u>n.15/</u> Cont'd on following page...

Because attorney Krupp's ineffective assistance and the foregoing plain errors were obvious from the transcript**n.16/**, direct appeal federal defenders**n.17/** Joseph Laws and Patricia Garrity had no strategic reason for failing to brief these Grounf Three(a) issues.

**b)The Confusing Use Of The Word "Probability":**

Because any jury instruction using the civil preponderance of the evidence "probability" standard requires a New Trial**n.18/**, due to that "structural defect in the constitution of the trial mechanism" resulting in "there being no jury verdict of guilt beyond a reasonable doubt"**n.19/**, Judge Saris was correctly "worried how the jury could understand reasonable probability and then beyond a reasonable doubt, how it could understand those concepts in tandem. I wasn't sure I understood it so I wasn't sure how they would" (x-11/12/99 tr.pg.'s 47-48)**n.20/**.

---

... **n.15/** White v. McAninch, 235 F3d 988, 966-1000 (6th Cir. 2000); Freeman v. Class, 95 F3d 639, 640-642 (8th Cir. 1996).
**n.16/** Gray v. Greer, 800 F2d 644, 646-647 (7th Cir. 1986).
**n.17/**

**n.18/** Commonwealth v. Sullivan, 20 Mass App. Ct. 802, 803-807 (1985) citing In Re Winship, 397 US 358 (1970). Assigned CJA counsel will be requested to run an all-50-states and Federal Westlaw and/or Lexis/Nexus computer search for all decisions ordering a new trial when the word "probability" was used in conjunction with the government's burden of proof, id.
**n.19/** Sullivan v. Louisana, 508 US 275, 280-282 (1993)
**n.20/** Lanigan v. Maloney, 853 F2d 40, 45-50 (1st Cir. 1988); Dunn v. Perrin, 570 F2d 21, 23-25 (1st Cir. 1978); Commonwealth v. Kane, 19 Mass App.Ct. 129, 139 (1984)(describing conflicting instruction language as a "goulash").

Judge Saris correctly "was worried about your language which I think... undercut reasonable doubt" (x-11/12/99 tr.pg. 53) by trivilizing the governments burden of proof beyond a reasonable doubt, n.21/ using the word "probability" for an element of the offense, but incompetent attorney Krupp disagreed paralogically saying "I don't think the reasonable probability language does undercut reasonable doubt. They have to find beyond a reasonable doubt that there is a reasonable probability" (x-tr.11/12/99 tr.pg.53) which truthfully confuses petitioner Capozzi as much as it confused Judge Saris.

The court then repeated the following preponderance of the evidence "probability" instruction two times:

> "In other words, this element is satisfied if the government establishes beyond a reasonable doubt that if Mr. Capozzi had taken Mr. McGrath's funds, there is a realistic **probability of an adverse effect on Mr. McGrath's ability to engage in interstate commerce**, in any way or degree, even if that effect is minimal". (tr.9:116)

Attorney Krupp did not object to the "probability of an adverse effect (on) interstate commerce" instruction (tr.9:126-127) and in effect direct appeal attorneys Joseph Laws and Patricia Garrity did not brief this issue or supplement their 2003 (or file a reply) brief challenging the unconstitutionality

n.21/ Commonwealth v. Rembiszuski, 391 Mass 123(1984); Commonwealth v. Kelleher, 395 Mass 821(1985); United States v. Pickney, 551 F2d 1241 (DC Cir. 1976) all required new trials based on jury instructions undercutting and trivilizing the government's burden of proof beyond a reasonable doubt, id. Accord, Lanigan v. Maloney, 853 F2d 40(1st Cir 1988)

of the preponderance of the evidence despite an intervening post-trial decision[n.22/]that was retroactive[n.23/].

Despite Judge Saris' concerns which were justified by decisional law, ineffective appellate counsel's brief page 61 erroneously argued "the government had to prove beyond a reasonable probability that interstate commerce would have been affected", id, and the First Circuit erroneously upheld a preponderance of the evidence burden of proof that the "government must show only that the extortionate conduct created a realistic probability of a de minimus effect on interstate commerce", United States v. Capozzi, 347 F3d 327, 335 (1st Cir. 2003).

Petitioner asserts his Fifth and Sixth Amendment Right to only a jury finding the 18 USC §1951(a) element of effect on interstate commerce beyond a reasonable doubt using only the statutory language in jury instructions applying the Winship-Apprendi, rule, Blakely v. Washington, 124 S.Ct.2531, 2536-2543 (2004) which the Supreme Court has repeatedly held trial and appellate judges do not have the lawful power to reduce a mere "probability" preponderance of the evidence standard, id.

C)Confusing "Connection" And "Knowledge" Instructions:

Count One provided notice of a charge that petitioner "did knowingly possess,in and affecting commerce, a firearm", id,

---

n.22/ Apprendi v. New Jersey, 530 US 466 (June 26, 2000);
n.23/ Griffith v. Kentucky, 479 US 314, 328 (1987) cited in Justice Breyer's opinion in United States v. Booker, 543 US ___, Slip opinion page 25 (1/12/05).

which appears to connect the firearm to petitioner's knowledge and commerce. Trial judge Saris, however, instructed:

> "<u>nor must the government prove</u> that the firearm or ammunition moved accross state lines **in connection with the charge in the indictment**... In addition <u>the government does not have to prove that Mr. Capozzi knew that the firearm had crossed state lines.</u>"
> (tr.9:107)

Attorney Krupp did not object (tr.9:126-127) and appellate attorneys Laws and Garrity did not brief the confusing instructions on the government not having to prove commerce "in connection with the charge in the indictment", which lessened their burden similarly challenged in Ground Three(b), <u>Supra</u>, or language that the government did not have to prove knowledge despite the indictment using the term "knowingly", <u>id</u>.

In light of the punishment range for 18USC §922 offenses exceeding Mass.General Laws chapter 269, section 10 punishment for possession of a firearm, petitioner interpleads the aggravated punishment "in or affecting commerce" element of §922(g)(1) as implicating the rule of <u>Apprendi v. New Jersey</u>, 530 US 466 (2000) as strictly construed under the impact analysis of <u>Blakely v. Washington</u>, 124 S.Ct. 2531, 2536-2543(2004) which means the erroneous jury instruction which totally eliminated the commerce element by stating, "nor must the government prove that the firearm or ammunition moved accross state lines **in connection with the charge in the indictment**" (tr.9:107) requires a 28 USC § 2255 writ of habeas corpus be granted vacating the sentence of 300 months and conviction on count one because jurors are presumed to have followed this court's instruction that they

need not find any commerce "connection with the charge in the indictment", id.<u>**n.24/**</u>

In light of the <u>Apprendi-Blakely-Booker</u> trend of the Supreme court holding the language of words used in elements of an aggravated punishment offense mean what they say they mean, petitioner also challenges the instruction that <u>"the government does not have to prove that Mr. Capozzi knew</u> that the firearm had crossed state lines" (tr.9:107) as being in direct conflict with the jurors understanding of the word "knowingly" in the § 922(g)(1) indictment, causing prejudicial confusion and unconstitutionally lessening the government's burden of proof<u>**n.25/**</u>. This equally applies to the subsequent Hobbs Act lack of knowledge and intent instructions (tr.9:115).

---

**n.24/** Subsequent conflicting instructions did not explain the error and, therefore, cannot cure the erroneous language <u>Francis v. Franklin</u>, 471 US 307, 319, 325(1985); <u>Commonwealth v. Reposa</u>, 400 Mass 516, 519-523(1987).
**n.25/** <u>Staples v. United States</u>, 511 US 600, 602-619 (1994); <u>Bryan v. United States</u>, 524 US 184, 199(1998); <u>People v. Ryan</u>, 626 NE2d 51, 54-55(NY 1993) cited in <u>Dixon v. Miller</u>, 293 F3d 71, 79(2nd Cir. 2002); <u>People v. Sanchez</u>, 652 NE2d 925, 929-930 (NY 1995); <u>Liparota v. United States</u>, 471 US 419, 424 n.7 (1985); <u>Speach v. United States</u>, 968 F2d 795, 796-798 (9th Cir. 1992); <u>United States v. Ahmed</u>, 101 F3d 386, 390 (5th Cir. 1996); <u>United States v. Kufrovich</u>, 997 F.Supp 246, 255-256 (D.Conn 1997)

12D)GROUND FOUR:AN EVIDENTIARY HEARING SHALL SHOW INEFFECTIVE
   DIRECT APPEAL COUNSEL'S FAILURE TO BRIEF n.26/ AND INEFFECT-
   TIVE TRIAL COUNSEL'S  FAILURE TO OBJECT,OR REQUEST EVIDENTIARY
   HEARING TRIAL ON FACTS NOT CONCEEDED, OR FAILURE TO FULLY
   PRESERVE FOR APPEAL n.27/ MULTIPLE UNITED STATES V. BOOKER
   125 S.Ct    (2005);BLAKELY V. WASHINGTON,124 S.Ct. 2531,2536-
   2543(2004);APPRENDI V. NEW JERSEY,530 US 466(2000);JONES V.
   UNITED STATES,526 US 227(1999)RELATED SENTENCING FLAWS,INCLUDING
   BUT NOT LIMITED TO UNCONSTITUTIONAL MANDATORY GUIDELINES n.28/,
   VINDICTIVE TOP OF RANGE DISPARITY AND ENHANCEMENT RECOMMENDAT-
   IONS n.29/ PRIOR ACQUITTED CRIME AND UNCHARGED    OBSTRUCTION
   PREJUDICIAL FACTORS n.30/ AND PENDING CHARGE UNRELIABLE FACTUAL
   ARGUMENTS n.31/,VIOLATED PETITIONERS RIGHTS TO A FUNDAMENTALLY
   FAIR SENTENCING WITH AGGRAVATED PUNISHMENT ELEMENTS PROVEN
   BEYOND A REASONABLE DOUBT BEFORE A JURY,GUARANTEED BY THE
   FIFTH AND SIXTH AMENDMENTS TO THE UNITED STATES CONSTITUTION

a)Unconstitutional Mandatory Guidelines Upward Departure:

     Attorney Krupp had no strategic reason for failing to object

to the following issues and the unconstitutional mandatory

sentencing guideline calculations to level 33, criminal history

category 6, resulting in a 235 to 293 month range [4/06/00

sentencing tr. pg.___].


n.26/ Prou v. United States, 199 F3d 37, 49-50(1st Cir. 1999);
United States v. Mannino, 212 F3d 835, 845(3rd Cir. 2000).
n.27/ Jones v. United States, 234 F3d 1251, 1259-1260(11th Cir.2000);
United States v. Granados, 168 F3d 343(8th Cir. 1999); Hill v.
United States, 118 F.Supp2d 910, 913-916(ED Wis. 2000); Neary v.
United States, 28 F.Supp2d 307(WD PA 1998); United States v. Headley,
923 F2d 1070, 1084 (3rd Cir. 1991):
n.28/ The district court has the authority and power to determine
United States v. Booker retroactivity in an   28 USC § 2255 proceeding
Murray v. United States, 2002WL982389(D.Mass2003); Breese v. Maloney,
322 F.Supp2d 109, 114-115(D.Mass2004).
n.29/ Bordenkircher v. Hays, 434 US 357, 363 (1978); United States
v. Goodwin, 457 US 368, 372(1982); North Carolina v. Pierce, 395 US
711 (1969).
n.30/ Ash v. Swenson, 397 US 436 (1970).
n.31/ United States v. Tucker, 404 US 443, 445-448 (1972)("Sentencing
on the basis of materially untrue assumptions violates due process");
United States v. Levy, 865 F2d 551, 560 (3rd Cir. en banc 1989);
Moore v. United States, 571 F2d 179, 183-184 n.7 (3rd Cir.1978);
United States v. Katzin, 824 F2d 234, 240 (3rd Cir. 1987).

In addition to specifics from Grounds Four(b)(c)(d) <u>infra</u> being incorporated into Ground Four(a) by reference for CJA assigned counsel to reformulate and brief, petitioner primarily challenges his excessive sentence by noting that following a <u>Jones</u>-<u>Apprendi</u>-<u>Blakely</u>-<u>Booker/Fanfan</u> violative "Find(ing) by a preponderance of the evidence that Mr. Capozzi committed the Beverly bank robbery" (s-tr.pg.'s 67-68) Judge Saris used improper factors to go to the top of the 235-293 month range and without the trial jury making a finding beyond a reasonable doubt, the court made an upward departure of "seven months for the obstruction" (s-tr.pg.74) of justice concerning court order violative contacts, claimed threats and intimidation of witnesses (s-tr.pg.'s22-29, 34, 40-41, 68-69, 72) which appeared to concern her most, <u>id</u>. Petitioner was not indicted, tried before a jury or convicted by a jury, nor did petitioner admit guilt, with respect to the foregoing criminal offenses used by Judge Saris to go to the top of the guideline range and then make an upward departure from 293 to 300 months, which was ten times the sentence of co-defendant Jason Stone having received when he should have been elidgable for at or near the same sentencing range.

Appellate attorneys Joseph Laws and Patricia Garrity had no strategic reason for failing to brief these <u>Apprendi</u> issues when other lawyers were challenging similar sentencing flaws at the time petitioners 2003 appeal was being briefed, argued and decided, and particularly whereas the petitioner hereby avers under penalty of perjury that he in fact directed appellate attorney's Laws and Garrity to brief these issues in his direct appeal and they refused to do so.

Absent appellate counsel's non-strategic ommissions certiorari could have been granted to your petitioner in January 2003 as was another in <u>Blakely v. Washington</u>, cert. granted, 540 US 965, 124 S.Ct.429(2003) and his sentence vacated because the government failed to "bring a seperate criminal prosecution for obstruction of justice", <u>Blakely</u>, at 124 S.Ct. pg. 2546(2004)(Justice O'Conner, with whom Justices Renquist, Breyer & Kennedy join dissenting).

**b)Top Of Range Disparity And Vindictiveness:**

Despite petitioner specifically objecting on grounds of sentencing disparity and vindictive government recommendations (s-tr.pg.'s 15-16, 59-66)[n32/]ineffective direct appeal attorneys Laws and Garrity did not brief these issues. At the evidentiary hearing both appellate counsel are expected to admit they had no strategic reason for not challenging the disparate vindictive sentence, attorney Matthew Kamholtz is expected to verify the government in fact did offer a term of "less than ten years" in prison, and other incentives, in exchange for the petitioner's full cooperation and testimony for the government in the now pending <u>United States v. DeCologero</u>, 01-10373-RWZ matter and/or other matters, giving up his Fifth Amendment Right to remain silent and his Sixth Amendment Right to Jury Trial. Christopher Bator is expected to be cornered during his testimony sufficiently for this court to find the government's sentencing recommendations were vindictive.[n.33]

[n.32/] When intermixed with a constitutional basis for challenge, disparity of sentences between co-defendants may be raised in habeas corpus proceedings, <u>Williams v. Currie</u>, 103 F.Supp2d 858(MDNC 2000) as well as other post-conviction appeals, <u>United States v. Maples</u>, 501 F2d 985 (4th Cir 1974), <u>Berthoff v. United States</u>, 140 F.Supp2d 50,52-72(D.Mass2001) and CJA assigned counsel is requested to fully research these issues.
[n.33/] The evidentiary hearing is necessary to fully develop the

Attorney Kamholtz is also expected to testify, or be exposed by petitioner's evidentiary hearing testimony, to multiple misrepresentations, including but not limited to coercive tactics and threats to petitioner and telling the petitioners concerned mother without petitioners consent that her son "is going to spend the rest of his life in prison" if he continued to refuse to cooperate, and that petitioners mother "need[s] to speak to" the petitioner about cooperating with the Kamholtz/government conspiracy to purchase testimony from the petitioner in a similar manner to the false testimony the government subsequently purchased from DeCologero case witnesses Stephen DiCenso, Thomas Regan, John P. DeCologero and others.

Petitioner politely and lawfully insisted on exercising his Fifth Amendment Right to remain silent and not to testify for the government and his Sixth Amendment Right to trials by jury while the sentencing hearing record conclusively shows petitioner never submitted to numerous approaches by the government to defacto second/back-up prosecutor Kamholtz for cooperation. [s-tr.pages 59-66].

---

4/6/00 hearing conflict in material facts concerning AUSA's prior plea offers, United States v. Davis, 115 F.Supp2d 101, 105(D.Mass 2000) and "impermissible retaliatory motive", id. "While an individual certainly may not be punished for exercising a protected statutory or constitutional right", United States v. Goodwin, 457 US 368, 372 (1982) because to "punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort", Bordenkircher v. Hays, 434 US 357, 363(1978)

        AUSA Bator's unsworn and perhaps false sentencing
hearing statements as to the ten years or less guilty plea
offers, assert what attorney Kamholtz told the petitioner was
"significantly incorrect and significantly false with regards
to the details of what he was proposed or offered, if he was at
all" [s-tr.page 77]. This factual dispute requires Kamholtz and
Bator to clarify whether any "term of less than ten years" [s-tr.
page 59] "was proposed or offered", or whether Kamholtz made it
up to the petitioner based on Bator's offer denial statement as to,
"if he was at all" [s-tr.pg.77]. Petitioner clearly accepted
responsibility for his actions [s-tr.pages 63-64] and absent AUSA
Bator's conspiracy to purchase testimony, or absent attorney
Kamholtz's series of misrepresentations, manipulations, or lies
this court may find it would have granted a 2 point reduction for
acceptance of responsibility and sentenced petitioner to the
middle or low end of a lesser sentencing range for a straight
guilty plea.

        The 4/6/00 sentencing hearing also shows a prima facie case
of vindictiveness or retaliation for petitioner standing on his
constitutional rights and refusing to be the government's parrot,
clearly reflected in AUSA Bator cleverly manipulating judge Saris
to the top of the 235 to 293 month range by aggressively arguing
for an upward departure based on less than extraordinary factors
[s-tr. pages 13-32] which include the government using a Boston
Globe reporter to falsely slander the petitioner and the foreseeable
response [pages 30-32, 44], severely restrictive and arguably
unconstitutional Plymouth County jail conditions provoking the
petitioner [pages 17-19, 44],uncharged and arguably untrue

-28-

intimidation of witnesses [pages 21-30] and thirteen juvinile
offenses [pages 11-16, 31] with the Beverly offenses petitioner
was acquitted of committing [pages 15-16]. Seeking a sentence
above the guideline range for petitioner exercising his Right
to trial by jury and winning acquittal on the Beverly offenses
alone supports a finding of vindictiveness, as AUSA Bator
misleadingly disputed defense attorney Krupp's vindictiveness
assertion [s-tr.page 15]. Petitioner needs an evidentiary hearing
to fully develop the record concerning his receiving a sentence
well over ten times greater than his co-defendant for seeking a
refund from a corrupt used car salesman [s-tr.page 65] on a Hobbs
Act theory of prosecution not appearing in any published decisions
in any other cases during two decades prior to the trial in this
matter.

### c)Prior Acquitted, Untried And Uncharged Crimes:

Petitioner submits resentencing is required based on the
absence of Jones-Apprendi-Blakely-Booker/Fanfan jury findings of
the government meeting its burden of proof beyond a reasonable
doubt on factors used for the 300 month sentence on count one
and 240 month sentence on count three**n.34/** [s-tr.pg.'s 69-76].
Judge Saris unconstitutionally stated, "I am going to consider
all three crimes. As I said before, I think that it's more likely
true than not true that you committed the Beverly bank robbery"
[s-tr.page 68] and "what I not so subtly hinted at is one of my
chief concerns here, in terms of whether or not to go up or not,

---

**n.34/** If count four was part of overall sentence the District Court
has power, when one count is vacated, to "unbundle" the sentencing
package and resentence on all counts one, three and four, United
States v. Handa, 122 F3d 690, 691-692 (9th Cir.1997)(citing First
Circuit precedent); United States v. Barron, 172 F3d 1153, 1160
(9th Cir. en banc 1999).

is the issue of the repeated obstruction of justice with intimidating witnesses" [s-tr. page 68] based on extensive argument and facts concerning those uncharged crimes [s-tr.pages 22-29, 34, 40-41, 68-69, 72], which were not conceeded, or admitted, and in fact were disputed at sentencing.

The government's argument concerning an untried Plymouth Jail charge [s-tr.page 18] was also disputed and refuted by argument and videotape evidence [s-tr.page 43] but may have adversely affected Judge Saris in her clearly erroneous finding that petitioner had "a strong propensity for violence" [s-tr. pg. 67].

### d)Fundamental Fairness:

Petitioner was threatened by AUSA Bator, through so-called defense attorney Matthew Kamholtz, who relayed Bator's message to "tell him if he does not cooperate, we're going to make it so that he never gets out of prison again in his life" [s-tr.pg. 60] causing an irreparable communication breakdown and a personal conflict when ethically and morally bankrupt Matthew Kamholtz scared petitioner's mother with Bator's threats.

Absent the foregoing grounds Four(a)(b)(c) sentencing flaws attorney Krupp properly argued for petitioner that "virtually all of his record consists of property crimes, it's breaking and entering, basically one after another, with an occassional breaking and entering into a car" [s-tr.page 36]

Based on AUSA Bator's exageratted misrepresentations Judge Saris erroneously found and predicted, "everything that's in front of me has persuaded me that he is the kind of career offender who congress most worried about. He committed crime after crime. He has a strong propensity for violence. I think he's likely to

-30-

commit more crimes" [s-tr.pg.67], which resulted in a potential

six month misdemeanor threat maximun sentence under MGL chapter

275, § 4 or fifteen year maximum for extorting money, chapter

265, section 25, being excessively increased under federal

Hobbs Act jurisdiction to the point of the government taking all

of petitioners adult life away from him.

In contrast to several new serious felony and misdemeanor

cases Jason Stone picked up, petitioner has a couple of no-violent

disciplinary reports and one minor self-defense fistfight in

2001, and had participated in a year-long program in USP

Lewisberg designed for anger management and drug/alcohol

addiction management and currently works as a law clerk at

MCI-Cedar Junction in Walpole, MA, prison law library, and also

is a member of Toastmasters International (a club dedicated to

bettering public speaking forum skills).

Whether four years without violence, or pro se successful

trial acquittals in United States v. Capozzi, 01-10373-RWZ in

October 2004 [one count New Trial Motion expected to result in

re-trial, and severed April-May 2005 pro se acquittals expected],

may merit a lesser packaged term of perhaps no more than 180 months

for extraordinary efforts at post-conviction rehabilitation[n.35]/

---

n.35/ Lesser sentences below guideline ranges are permissible
based on post-conviction rehabilitation to "an exceptionable degree"
more than mere "acceptance of responsibility", United States v.
Bradstreet, 207 F3d 76, 81-84(1st Cir. 2000); United States v.
Hasan, 205 F3d 1072, 1074 (8th Cir. 2000)(144 months reduced from
life based on extraordinary efforts at rehabilitation in prison
for 7 years); United States v. Core, 125 F3d 74, 76-79(2nd Cir.
1997)(downward departure at resentencing after reversal, based on
rehabilitation in prison).

is suggested as the fundamentally fair original sentence
petitioner should have been given in a straight guilty plea
offer, when contrasted to District of Massachusetts sentences
for similar convictions.<u>n.36/</u>

Following the January 12, 2005 <u>United States v. Booker</u>
desicion, petitioner is rushed to timely file this petition
and requests leave for CJA assigned counsel not only to obtain
and file mitigation evidence not obtained or used by Attorney
Krupp with post-sentence rehabilitation verification evidence
and/or records, and supplemental argument on denial of fundamental
fairness being denied at the April 6, 2000 sentencing hearing,
but he also requests Judge Saris to exercise her discretion to
vacate petitioners sentences based on fundamental fairness and
cumulative error grounds, at this time based on the likelihood
that her prediction of petitioner being a person who would commit
more crimes was incorrect.

Lastly, this court is respectfully requested to assign
CJA appointed counsel in light of the petitioners' <u>pro</u> <u>se</u>
overwhelming workload in the matter of <u>United Staes v. Capozzi</u>,
01-10373-RWZ with set trial dates of April (witness tampering by
killing and related counts), May (Hobbs Act robbery and related
counts) and january 9th, 2006 (RICO 3-4 month long trial involving
two-plus year criminal enterprise).

<u>n.36/</u>  Assigned CJA counsel is requested to obtain records of
Hobbs Act sentences imposed in 2000 thru 2005 for the resentencing
hearing in this case, as well as Hobbs Act sentence appeal records
from 2000 thru 2005.

AO 243 (Rev. 5/85)

D. Ground four: _____ **SEE ATTACHED GROUND FOUR** _____

Supporting FACTS (state *briefly* without citing cases or law): _____

**SEE ATTACHED GROUND FOUR SUPPORTING FACTS**

13. If any of the grounds listed in 12A, B, C, and D were not previously presented, state briefly what grounds were not so presented, and give your reasons for not presenting them: _____

14. Do you have any petition or appeal now pending in any court as to the judgment under attack?
Yes ☐ No ☑

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

(a) At preliminary hearing _____ NONE

(b) At arraignment and plea _____ AT Not guilty PLEA
MATThew KAMholtz

(c) At trial _____ PeTER KRUpp

(d) At sentencing _____ PeTER KRUpp

AO 243 (Rev. 5/85)

(e) On appeal _____ *Joseph Laws And Patricia Garrity*

(f) In any post-conviction proceeding _____ *None*

(g) On appeal from any adverse ruling in a post-conviction proceeding _____ *None*

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at approximately the same time?
Yes ☑ No ☐

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
Yes ☐ No ☑    *Not At date of this Filing*

(a) If so, give name and location of court which imposed sentence to be served in the future: _____

_____

(b) Give date and length of the above sentence: _____

_____

(c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
Yes ☐ No ☑

Wherefore, movant prays that the Court grant him all relief to which he may be entitled in this proceeding.

_____
Signature of Attorney (if any)

I declare under penalty of perjury that the foregoing is true and correct. Executed on

*January 20, 2005*
(date)

_____
Signature of Movant

AFFIDAVIT OF DEREK A. CAPOZZI

FILED
IN CLERKS OFFICE

I, Derek A. Capozzi, hereby do state the following information
is true and accurate to the very best of my memory, ability and
recollection:

2005 JAN 25 P 12 22

05 CV 10171 PBS
U.S. DISTRICT COURT
DISTRICT OF MASS.

1. I am a defendant in the case of the United States of America
v. Derek A. Capozzi, Crim. # 98-10087-PBS. I was indicted on this
matter in or around March or April of 1998. In the Spring of 1999 I
was appointed Peter B. Krupp to represent me under the C.J.A..
Thereafter I went to trial with Peter B. Krupp in November of 1999
and after a ten day trial I was convicted by a jury of one count of
Attempting to Commit Extortion which Affected Interstate Commerce
in violation of 18 U.S.C. § 1951, one count of being a Felon in
Possession of a Firearm in and affecting Interstate Commerce in
violation of 18 U.S.C. § 922(g), and one count of Use of a Firearm
During and in Relation to a Crime of Violence.

2. Subsequent to my arraignment on these offenses, my indictment
was superceded to include charges of Armed Bank Robbery, a second
instance of Using a Firearm during and in Relation to a Crime of
Violence and two further instances of being a Felon in possession of
the same firearm initially charged in the first indictment (that is,
one further instance of shooting bullets into a house in Haverhill,
MA. on a separate occassion as well as possessing the same gun used
in the Bank Robbery. In all three instances, the government alleges
the same firearm was possessed.)

3. After Peter B. Krupp was appointed he came to Plymouth County
Correctional Facility to visit with me. Our visits were in depth
conversations about a lenghty suppression hearing we were filing for
and would be going through and the facts relevant to that matter.
We also discussed other potential and actual pre-trial motions to be
filed. We never once discussed any potential defense theory nor did
Peter Krupp explain to me any of the elements of the offenses for
which I was charged in the indictment.

4. Throughout Peter Krupp's representation of me I was being

held on a no human contact status at Plymouth County Correctional
Facility in an isolation unit and was not allowed any access to the
institutional law library. I could request copies of case law if I
provided --in writing-- a request for specific cases. If I failed to
be case-specific, I would not recieve any materials. I was most
concerned with illegal search and seizure due to the suppression
hearing I was seaking and from case-cites learned through other
prisoners as a starting point, I began to study illegal search and
seizure jurisprudence solely, and on occassion I would find cases
which led to other issues in which I pursued. I made my requests
for specific cases from the citations I'd learn in the cases I was
provided in each instance. My knowledge and focal point of my case
became solely this one main area of which pertained to the firearm
offenses only.

    5. After the court ruled on our suppression motion, a trial
date was scheduled for approximately 60 days later. I spoke with
Peter Krupp and informed him that I wanted to proceed to trial. I
then expected that he would come to Plymouth with me to discuss my
defense theory and expected testimony so that we would be prepared.

    6. On the immediate Friday before trial was to begin the
following Monday, I called Peter Krupp and complained to him that
he did not come to visit me to go over my defense theory and my
testimony. Mr. Krupp informed me that he already had been preparing
my defense theory and would see me on Monday at the trial. I then
informed him that I had my own defense theory to the charges I was
to be tried upon and that we would need to go over it extensively
so that he would present it effectively. That evening, Mr. Krupp
came to the jail to visit me, and vigorously attempt to persuade me
to not pursue the defense I wished to pursue. I disagreed and Mr.
Krupp informed me that on Monday he would inform the Court that we
have come to a breakdown in our relationship in as much as our ideas
as to how the defense should proceed.conflicted.

    7. After extensive ex parte hearing and colloquay with the
court, Mr. Krupp and myself on that Monday (the day of trial), I
waived the ability to claim that Mr. Krupp was ineffective for
pursuing the line of defense which I supported, but specifically
left open the option to pursue any claims of his ineffectiveness as

-2-

to his effectiveness in presenting the defense theory I wished
him to present.

8. Trial then commenced and later that day and in the days
thereafter I informed Peter Krupp of my intention to testify in my
own defense. Peter did not take this seriously at first and neglected
to prepare me for taking the stand. Subsequently, Peter Krupp and I
had a conversation in the holding tank area at the Courthouse, Peter
Krupp told me that he would not put me on the stand. I insisted that
I wanted to take the stand. Peter insisted that he would not let me
testify and stated that he could not allow me to do so because he
claimed that he believed that I was guilty of committing the crimes
which I was charged with, including the shooting in Haverhill and
the bank robbery charges which he had successfully had gotten severed
from the current trial. I told Peter Krupp that I had never told him
that I was guilty of any of these offenses. He claimed he had an
ethical obligation not to put me on the stand to testify if he knew
I would be committing perjury. I told him again that I never once
admitted to him that I was guilty of any of the offenses which I was
charged and I wanted to testify. Peter Krupp told me that he beli-
eved from all the pretrial work that he'd done, conversations he'd
had with me and interviews with witnesses that I was guilty, that
the government would question me about the Haverhill shooting, the
bank robbery and various other evidence of 404(b) nature that was
otherwise inadmissible, if I were to take the stand, and that he
would not allow that. I still insisted upon testifying and Mr. Krupp
told me that I could do so, but that he would not question me at
all if I got up on the stand. I asked him how I tell my side of the
story if he won't question me and he stated that he "Don't know".

9. At this point, I decided that I could not take the stand
at all because my attorney would not prepare me for my testimony,
would not question me on the facts I wished to enter into evidence,
and was going to look even guiltier to a jury if my own attorney
was to act adverse to my testimony if I took the stand in my defense.

10. In the months prior to trial, I read over the charges in

the indictment against me very carefully. I then received the
grand jury minutes which formed the basis for my indictment and I
carefully read over them as well. It was very noticable to me at
that time that when the State Trooper (Robert Irwin) had testified
at the grand jury, he was very careful to produce all the information
necessary to establish that the firearm in question had been manufac-
tured outside of the state of Massachusetts and had therefor traveled
accross state line, therefor I had --in his opinion-- possessed the
firearm in and affecting interstate commerce. What I did not notice
at that time was the fact that nobody presented any evidence at all
to the grand jury that the victim of the attempted extortion had
conducted any of his business in or out of the state of Massachusetts.
In fact this had no bearing on the matter to me at the time because
I was never informed by Peter Krupp that the crime I was charged
with was "Interference with Interstate Commerce". I always believed
my offense to have been "Attempted Extortion" which had an effect
upon local --intrastate-- commerce.

     11. After trial had begun, I began hearing phrases such as;
"Interstate commerce" and "Hobbs Act" when the lawyers were talking.
I asked Peter Krupp at one point what this meant and he told me
that the government had to prove that the extortion attempt had an
affect upon interstate commerce. I asked him how and he told me that
the government would prove this, merely to obtain jurisdiction, by
entering motor vehicle documents to proove that the truck which was
the subject of the attempted extorion had been manufactured outside
of Massachusetts. At one point in the trial, the government failed
to introduce the document which proved the vehicle had come from
another state, and I told Peter Krupp that I had noticed this; he
acknowledged this "error" and told me to be quiet so they would not
notice and correct this mistake. At this point I believed that the
government had failed to meet it's burden of proof on the interstate
commerce nexus and believed I would be acquitted of this count.

     12. After the trial was almost over, the Court held a charge
conference at which I was present. I began hearing arguments of
something called the "depletion of assets theory" and Mr. McGrath
--the victim-- having been engaged in an interstate business entity

-4-

due to his assertion at trial of allegedly purchasing vehicles at car auctions both in and outside of the state of Massachusetts which he sold out of his lot in Massachusetts. I did not understand any of the significance of these arguments at that time and was very confused. Still, nobody had explained to me the elements of the offenses I was charged with.

13. After being convicted I began researching this offense on my own because I was upset to learn that had I known the elements of this offense I would have first informed Peter Krupp to ask for proof from the government that Mr. McGrath ever engaged in interstate commerce and I would have directed Peter Krupp to have an investigator interview witnesses and obtain documents to establish that Mr. McGrath's business was solely local --intrastate-- in nature. I say this because I know that Mr. McGrath was in business with only local car dealerships and auto auctions as I know two of the only individuals that Mr. McGrath had conducted business with and through at that time. In fact, a man I know had called Mr. McGrath subsequent to my arrest and tried to offer McGrath funds to drop the case against me (without my prior knowledge or consent) and that man was involved with a business associate of McGrath's. Subsequently, Mr. McGrath reported this incident to ATF agent John Mercer and he informed agent Mercer he would not tell him whom the individual was because that person was a bigshot in the used car business and could put McGrath out of business if McGrath ratted on him. This information was submitted by the gov't in support of their motion for an upward departure at sentencing. Knowing the interstate nature element of the offense, I would certainly have had Peter Krupp interview these people had I been informed of such prior to trial.

14. Had I been informed of the interstate nature element of the offense, I would also have certainly testified that Mr. McGrath was untruthful when he'd stated he conducted interstate business because he had previously engaged in conversations with me about his business. That he was introduced to me by associates of his I had met whom were involved in insurance schemes by which they would rent U-Hauls or Ryder trucks from McGraths lot with the intentions of committing insurance scams as these trucks had a 50,000 dollar

-5-

insurance premium on them whereas cars have only 20,000 dollars
insurance premium. That I was introduced to him as he would file
false sales documents for me so that I could purchase autos in
fake names and he intentionally did this in the case at hand, and
that he told me he only conducted his auto business with local
individuals in the used car business whom he could trust.

15. I also know that the indictment in the case at hand alleged
that I "did unlawfully, knowingly, and willfully attempt to obstruct
, delay and affect commerce and the movement of any articles and
commodities in commerce,". Noplace in my indictment did the word
"interstate" appear to inform me that such nexus was necessary.
Furthermore, had I known this to be the case, I would certainly
also have testified that I did not know that I was interfering with
interstate commerce at any rate, and certainly did not intend to so
do either. I would have held the government to this burden of proof
because this was how I was charged in the indictment. Instead, Mr.
Krupp ineffectively allowed the government to amend the indictment
at trial and let the jury be instructed that I did not have to know
or intend to affect interstate commerce. Had I been informed of the
elements of this offense, there is no dought that I would not have
allowed Mr. Krupp to conceed to a constructive amendment of the
indictment which broadened the terms of conviction against me. There
is also no dought that I would have testified to all of the afore-
mentioned statements had I been informed of the nature of the
charges against me by Peter Krupp prior to trial and had he allowed
for and prepared me to testify in my defense.

I, Derek A. Capozzi, hereby do state under pain and penalty
of perjury that all of the above statements are truthful and accurate
to the best of my recollection, memory and ability. Signed on this
21 day of January , 2005.

DEREK A. CAPOZZI.

xc file

-6-

JS 44
(Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a)** ~~PLAINTIFFS~~ *PETITIONER*
DEREK A. CAPOZZI

~~DEFENDANTS~~ *Respondent*
UNITED STATES

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  *Eastern*
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)  *ProSe*
DEREK CAPOZZI A-85156
P.O. BOX 100
S. WALPOLE, MA. 02091

ATTORNEYS (IF KNOWN)
ASSISTANT Atty General CHRISTOPHER BATOR
ONE COURTHOUSE WAY (SUITE 9200)
BOSTON, MA. 02210

**II. BASIS OF JURISDICTION** (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff
☑ 2 U.S. Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury — Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 365 Personal Injury — Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 |  | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander |  |  | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act |  | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine / **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability / ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 850 Securities/Commodities/Exchange |
|  | ☐ 350 Motor Vehicle / ☐ 371 Truth in Lending | ☐ 690 Other |  | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability |  | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** |  | ☐ 863 DIWC/DIWW (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 442 Employment / *HABEAS CORPUS:* | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations / ☑ 530 General |  | **FEDERAL TAX SUITS** | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 444 Welfare / ☐ 535 Death Penalty | ☐ 790 Other Labor Litigation |  | ☐ 890 Other Statutory Actions |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights / ☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |  |
| ☐ 290 All Other Real Property |  ☐ 550 Civil Rights |  | ☐ 871 IRS — Third Party 26 USC 7609 |  |
|  | ☐ 555 Prison Condition |  |  |  |

**V. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

☑ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)
28 USC § 2255 FEDERAL HABEAS CORPUS

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ YES ☑ NO

**VIII. RELATED CASE(S) IF ANY** (See instructions):
JUDGE SARIS US V CAPOZZI
DOCKET NUMBER 98-10089-PBS

DATE  JANUARY 21, 2005
SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

RECEIVED
2005 JAN 26 P 12: 22
U.S. DISTRICT COURT
DISTRICT OF MASS.

05 101 PBS

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

1. **TITLE OF CASE (NAME OF FIRST PARTY ON EACH SIDE ONLY)** *Derek* ~~IN CLERKS OFFICE~~ FILED *A*

   *V. UNITED STATES*

   2005 JAN 25 P 12: 22

2. **CATEGORY IN WHICH THE CASE BELONGS BASED UPON THE NUMBERED NATURE OF SUIT CODE LISTED ON THE**
   **CIVIL COVER SHEET.   (SEE LOCAL RULE 40.1(A)(1)).**

   U.S. DISTRICT COURT
   DISTRICT OF MASS.

   ___ I.    160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

   ___ II.   195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,     *Also complete AO 120 or AO 121
             740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.       for patent, trademark or copyright cases*

   05 10171 PBS

   ___ III.  110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
             315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
             380, 385, 450, 891.

   ✓ IV.     220, 422, 423, 430, 460, 510, (530), 610, 620, 630, 640, 650, 660,   *HABEAS CORPUS § 2255*
             690, 810, 861-865, 870, 871, 875, 900.

   ___ V.    150, 152, 153.

3. **TITLE AND NUMBER, IF ANY, OF RELATED CASES.  (SEE LOCAL RULE 40.1(E)).**
   *U.S. V. CAPOZZI    98-10082-PBS*

4. **HAS A PRIOR ACTION BETWEEN THE SAME PARTIES AND BASED ON THE SAME CLAIM EVER BEEN FILED IN THIS**
   **COURT?**                                                           YES ☐       NO ☑

5. **DOES THE COMPLAINT IN THIS CASE QUESTION THE CONSTITUTIONALITY OF AN ACT OF CONGRESS AFFECTING THE**
   **PUBLIC INTEREST?   (SEE 28 USC 2403)**                             YES ☐       NO ☑
   **IF SO, IS THE U.S.A. OR AN OFFICER, AGENT OR EMPLOYEE OF THE U.S. A PARTY?**
                                                                        YES ☐       NO ☐

6. **IS THIS CASE REQUIRED TO BE HEARD AND DETERMINED BY A DISTRICT COURT OF THREE JUDGES PURSUANT TO**
   **TITLE 28 USC 2284?**                                               YES ☐       NO ☑

7. **DO ALL PARTIES IN THIS ACTION RESIDE IN THE CENTRAL SECTION OF THE DISTRICT OF MASSACHUSETTS**
   **(WORCESTER COUNTY) - (SEE LOCAL RULE 40.1(C)).**                   YES ☐       NO ☑
   **OR IN THE WESTERN SECTION (BERKSHIRE, FRANKLIN, HAMPDEN OR HAMPSHIRE COUNTIES)? -**
   **(SEE LOCAL RULE 40.1(D)).**                                        YES ☐       NO ☐

8. **DO ALL OF THE PARTIES RESIDING IN MASSACHUSETTS RESIDE IN THE CENTRAL AND/OR WESTERN SECTIONS OF**
   **THE DISTRICT?**                                                    YES ☐       NO ☑
   (a)    IF YES, IN WHICH SECTION DOES THE PLAINTIFF RESIDE? _____

9. **IN WHICH SECTION DO THE ONLY PARTIES RESIDING IN MASSACHUSETTS RESIDE?** *EASTERN SECTION*

10. **IF ANY OF THE PARTIES ARE THE UNITED STATES, COMMONWEALTH OF MASSACHUSETTS, OR ANY GOVERNMENTAL**
    **AGENCY OF THE U.S.A. OR THE COMMONWEALTH, DO ALL OTHER PARTIES RESIDE IN THE**
    **CENTRAL SECTION;  YES ☐ NO ✓        OR WESTERN SECTION;  YES ☐   NO ✓**

**(PLEASE TYPE OR PRINT)**
~~ATTORNEY'S NAME~~  *Derek Capozzi         PRO SE*
**ADDRESS**          *P.O. Box 100*
**TELEPHONE NO.**    *So. Walpole, MA 02071*

(Categfrm.rev - 3/97)