UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DEREK CAPOZZI            )
                        )
     V.                 )      Civ. No. 05-10171-PBS
                        )
UNITED STATES OF AMERICA )

**OPPOSITION TO DEREK CAPOZZI'S MOTION
PURSUANT TO 28 U.S.C. §2255**

The United States opposes defendant-petitioner Derek Capozzi's ("Capozzi") motion pursuant to 28 U.S.S.C. §2255.

**I. Capozzi's Conclusory Assertion That He Was Coerced By Counsel Not To Testify Is Directly Contradicted By The Facts And Insufficient As A Matter Of Law.**

**A. Relevant Law**

A petitioner claiming ineffective assistance of counsel must show, first, that his counsel's performance was deficient and second, that this deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984); Bucuvalas v. United States, 98 F.3d 652, 658 (1st Cir. 1996); Bonneau v. United States, 961 F.2d 17, 20 (1st Cir. 1992). The petitioner has the burden of proving both prongs of this test, and the burden is a heavy one. Bucuvalas, 98 F.3d at 658. An attorney's performance is deficient if it is "'so inferior as to be objectively unreasonable.'" Id. (Quoting United States v. McGill, 11 F.3d 223, 226 (1st Cir. 1993)). The petitioner must show that, but for his counsel's deficient performance, the outcome

would have been different, <u>Strickland</u>, 466 U.S. at 694; <u>United States v. Hart</u>, 933 F.2d 80, 83 (1st Cir. 1991); <u>Carsetti v. Maine</u>, 932 F.2d 1007, 1012 (1st Cir. 1991).  There is a strong presumption that the counsel's performance comes within the wide range of reasonable professional assistance. <u>Strickland</u>, 466 U.S. at 689.  The defendant must overcome the presumption that his counsel's performance could "be considered sound trial strategy."  <u>Id</u> (quoting <u>Michael v. Louisiana</u>, 350 U.S. 91, 101 (1955)).  The court's scrutiny of the attorney's performance must be highly deferential.  <u>Id</u>.

A criminal defendant's decision to testify or not is "primarily a matter of trial strategy to be decided between the defendant and his attorney."  <u>United States v. Systems Architects. Inc</u>., 757 F.2d 373, 375 (1st Cir. 1985). "[A] criminal defendant must claim his privilege or right to testify by attempting to take the stand or it is waived."  <u>Siciliano v. Vose</u>, 834 F.2d 29, 30 (1st Cir. 1987).  Where he is silent, the court will presume that a criminal defendant who fails to claim his right to testify at trial waives that right.  <u>Passos-Paternino v. United States</u>, 12 F. Supp. 2d 231, 239 (D.P.R. 1988), affirmed, 201 F.3d 428 (1st Cir. 1999) ("We affirm essentially for the reasons stated in the district court's opinion.") citing <u>Siciliano</u>, 834 F.2d at 30; <u>United States v.</u>

Bernloehr, 833 F.2d 749, 752 (8th Cir. 1987); and United States
v. Edwards, 897 F.2d 445 (9th Cir. 1990).  Moreover, because "It
is just too facile a tactic to be allowed to succeed for a
convicted defendant "to say 'My lawyer wouldn't let me testify.
Therefore I'm entitled to a new trial'", an assertion by a
defendant, even under oath, that his right to testify was denied
him, "is insufficient to require a hearing or other action."
Passos-Paternino, 12 F.Supp. 2d at 239, citing Siciliano, 834
F.2d at 31.  A petitioner who was silent at trial concerning his
right to testify who seeks a hearing, or other action, must
provide some substantiation "such as an affidavit from the lawyer
who allegedly forbade his client to testify.. ." Id. citing
Underwood v. Clark, 939 F.2d 473, 475-76 (7th Cir. 1991).
Moreover, such a claim must also be based upon "specific
allegations" which are "supported by the record".  Id. at 239-240
and cases cited.

### B. Capozzi Explicitly And Expressly Waived His Right To Testify

In direct refutation of his claim, and in response to an
inquiry by the Court, Capozzi expressly waived his right to
testify just before the defense rested, and he explicitly stated
that it was a strategic decision.

**SIDEBAR CONFERENCE, AS FOLLOWS:**

THE COURT: It is the increasing practice in

the state court, which I thought I would just
mention in this case, although it's not
constitutionally required, and ask Mr. Krupp
about whether or not Mr. Capozzi is going to
take the stand.
MR. KRUPP: I don't believe he is.
THE COURT: And you agree with that?
THE DEFENDANT: Yeah, I am not going to.
THE COURT: All right. It's, as I
said, this is a new practice of developing
-- of asking, particularly since you have
taken such an interest of the strategy, I
want to make sure you are in agreement with
that strategy.
THE DEFENDANT: Yeah, I'm in agreement.
THE COURT: All right.

**END OF SIDEBAR CONFERENCE.**

See November 12, 1999 (day eight) Trial Transcript at pages 91-

92.

Capozzi's explicit and knowing waiver of his right to

testify and his acknowledgment that it was a strategic decision

he agreed with disposes of his claim.

### C. Capozzi's Unsubstantiated And Conclusory Assertion That He Was Coerced By Counsel Not To Testify Is Insufficient To Entitle Him To A Hearing Or Other Action

More than five (5) years after his trial, and more than four

and three-quarter years after his sentencing, Capozzi now claims

for the first time that his lawyer coerced him not to testify at

trial. In addition to being directly refuted by his own

statements at trial (see above), his facile claim lacks any

substantiation beyond his own self-serving affidavit.  As noted

above, that is insufficient to entitle Capozzi to a hearing or
any other action.  <u>Passos-Paternina</u>, 12 F.Supp. 2d at 239
(affirmed, 201 F.3d 428); <u>Siciliano</u>, 834 F.2d at 31; <u>Underwood</u>,
939 F.2d 475-76.

### D. Capozzi's Claim Is Further And Repeatedly<br>Contradicted By The Record

Capozzi's claim that his counsel somehow coerced him into
not testifying at trial is wildly inconsistent with the record.

**i)** On the morning of trial, Capozzi persistently refused to
accept his counsel's strategic decision and judgment concerning
his defense, thereby forcing his counsel (Peter Krupp -"Krupp")
to move to withdraw.  See Transcript of Ex-Parte Hearing dated
November 1, 1999, Passim.[1]  Capozzi ultimately got his
way when the court directed his lawyer to put on Capozzi's chosen
defense following his waiver of an ineffective assistance claim
based on the merits of the defense. <u>Id</u>. That is not the
behavior of one who can be coerced by counsel.  Capozzi's newly-
invented and unsubstantiated claim that shortly thereafter Krupp
coerced him into not testifying is not credible.

**ii)** During the ex-parte hearing on the morning of trial,
Krupp explicitly cited to the Court the Massachusetts Rule of
Professional Conduct (Rule 1.2) that requires a lawyer in a
criminal case to "abide by the client's decision as to ...

---

[1] Capozzi also fired his first lawyer, Matthew Kamholtz.

whether the client will testify." Id. at p. 29. Capozzi's
implicit assertion that shortly after explicitly acknowledging
the existence and applicability of that rule, Krupp directly and
knowingly violated it by coercing Capozzi not to testify at trial
(rather than, for example, again moving to withdraw) is not
credible.[2]

**iii)** Immediately following the guilty verdict, Krupp, during
a conference, stated to the Court that Capozzi intended to
testify in his upcoming bank robbery trial. Transcript dated
November 16, 1999, ("Tenth Day of Jury Trial") at p. 10. That
shortly after having, allegedly, improperly coerced Capozzi not
to testify because of concerns that he would commit perjury (see
Capozzi's affidavit at p. 3), Krupp would propose and
endorse such testimony at his upcoming trial, is similarly not
credible.

**iv)** Both before and after he claims he was improperly
prevented from testifying by Krupp, Capozzi expressed his
gratitude and admiration for Krupp. Specifically, at sentencing

---

[2] Also during the ex-parte hearing, the Court explicitly
requested Krupp to inform the Court if he was concerned about "a
fraud on the court or a crime" relating to Capozzi's defense
strategy. Id. At 36. Capozzi's assertion that shortly thereafter,
when allegedly believing himself faced with this prospect, Krupp
coerced him not to testify, rather than alert the Court as
directed, is similarly incredible.

(approximately 5 months after the trial at which he claims to have been improperly coerced not to testify), Capozzi thanked Krupp in open court. Sentencing Transcript, dated April 6, 2000, at p. 65.  During the ex-parte hearing on the morning of trial, Capozzi repeatedly expressed his appreciation of Krupp.  See Transcript of Ex-parte Hearing dated November 1, 1999, at 14 ("he's a great lawyer); and 22 ("He's a great attorney.  I would love for him to represent me...").[3]

### E. Capozzi Makes No Showing That The Outcome Of The Trial Would Have Been Different Had He Testified

If Capozzi had testified he would have been subject to extremely damaging cross-examination concerning, among other things: his extensive and violent criminal record; his involvement in the Peabody bank robbery and the Haverhill shooting, both of which involved his use of the same gun charged in the instant case; and his involvement in the witness tampering conspiracy and the dismemberment and burial of Aislin Silva. (Capozzi's defense in the instant case - that was framed by police because of his involvement in the Aislin Silva murder - arguably opened him to cross-examination concerning his role in that matter. See, e.g. Transcript of Ex-Parte hearing dated

---

[3] Capozzi also allowed Krupp to represent him at his next trial.

November 1, 1999, at pp. 8-9, 16-19, 23.) For Capozzi to have
risked such cross-examination would have been strategic suicide.

Because he makes no showing that, had he testified, the
result would have been different, his argument is without merit.
<u>Strickland</u>, 466 U.S. at 694; <u>Hart</u>, 933 F.2d at 83.[4]

> **II.  Capozzi's Assertion That His Counsel
> Insufficiently Investigated and Cross-
> Examined Witnesses Re: The Effect On
> Commerce Of The Charged Attempted Extortion
> Relitigates Claims He Made On Direct Appeal
> And Is Otherwise Insufficient For Relief
> Under §2255.**

As best the government is able to understand it, Capozzi's
motion appears to assert, without any support, that had his
counsel properly investigated and cross-examined trial witnesses
he would have demonstrated that the government's evidence at
trial was insufficient to meet its burden of establishing that
his actions had a de minimus effect on interstate commerce.  See
Capozzi's Motion at pp. 8-12.  Capozzi's argument fails because,
among other things, it was raised and decided on direct review.
Except in extraordinary circumstances, a federal prisoner cannot
relitigate in a Section 2255 proceeding a claim that has been

---

[4] It is noteworthy that Capozzi never claims he is innocent
and, in fact, has acknowledged his guilt.  See Sentencing
Transcript, April 6, 2000, at p. 65, wherein he refers to the
attempted extortion of car dealer Michael McGrath as:  "...an
event in which a corrupt car dealer was threatened, yes.".

decided on direct review.  See <u>Withrow v. Williams</u>, 507 U.S. 680, 720-721 (1993) (collecting cases); <u>Argencourt v. United States</u>, 78 F.3d 14, 16 n.1 (1st Cir. 1996).

On direct appeal, Capozzi challenged "the sufficiency of the evidence underlying the Hobbs Act conviction." <u>United States v. Capozzi</u>,347 F.3d 327, 336-337 (1st Cir. 2003).  He specifically asserted ".. .that his violent demand for reimbursement from Gardner Park did not have even a 'de minimus effect' on interstate commerce." <u>Id</u>. At 336.  The court of appeals stated that "One common method for the government to establish the required 'de minimus effect' on interstate commerce is to show that the defendant's activity minimally depletes the assets of an entity doing business in interstate commerce." <u>Id</u>. At 337. The court then found that:

> The evidence adduced at trial showed that
> Gardner Park was a business that bought cars
> from out-of-state. Capozzi, unhappy with the
> truck that he had purchased from Gardner
> Park, threatened violence in an [**28]
> attempt to extort McGrath, the owner of
> Gardner Park, to reimburse him $4,000 for the
> truck.  On these facts, the jury reasonably
> could have concluded that if the extortion
> had been successful, Gardner Park's assets
> would have been depleted by $4,000, at least
> until it could have resold Capozzi's truck to
> another consumer.

<u>Id</u>.  Because Capozzi's claim was decided on direct review, he can not relitigate it here.  <u>Withrow v. Williams</u>, 507 U.S. at 720-721 and cases cited.

Even assuming, for the sake of argument, that Capozzi's claim was not precluded, it is without merit. Capozzi's argument consists entirely of speculation and unsupported assertions. (See Capozzi's Motion at pp. 8-14). He makes no showing that but for his counsel's allegedly deficient performance, the outcome would have been different. Strickland, 466 U.S. at 687, 694. He similarly does not overcome the strong presumption that his counsel's performance reflects sound trial strategy or comes within the wide range of reasonable professional assistance. Id.

### III. The Remaining Claims In Capozzi's Original § 2255 Motion Are Forfeited And/Or Without Merit.

In the remainder of his originally filed motion, Capozzi makes a series of unsupported arguments and conclusory assertions.  To the extent the government is able to understand them, each of the arguments is without merit and is barred by procedural default because it involves a claim not raised on direct appeal. See Massaro v. United States, 123 S.Ct. 1690, 1693 (2003) (stating the "general rule" that claims not raised on direct appeal may not be raised on collateral review[5]).

_____

[5] Capozzi also does not, and cannot, make the required showing of cause for failure to raise these claims at trial and on direct appeal, and "actual prejudice" resulting from his alleged error.  United States v. Frady, 456 U.S. 152, 170 (1982); Coleman v. Thompson, 501 U.S. 772, 773 (1991); Bouley v. United States, 523 U.S. 614, 622 (1998).

10

Capozzi's remaining assertions appear to be the following.

a) Capozzi claims Krupp failed to interview, prepare and subpoena Mark Lessor, Dawn Pearson, Sheila Hinchey, Heather Stone, Kelly McCarthy and Jared LNU and customers of Gardner Park Auto Sales to contradict the testimony of Jason Stone and Michael A. McGrath.  See Capozzi's Motion at pp. 12-14.  Capozzi makes no showing that Krupp's purported omissions were not strategic, that his behavior was in any way deficient, and that but for that behavior the outcome would have been different.  <u>Strickland</u>, 466 U.S. at 687, 689, 694.  Moreover, Jason Stone and Michael McGrath were extensively and effectively cross-examined at trial. There was abundant evidence corroborating their testimony. Specifically, the testimony of four eyewitnesses - Michael F. McGrath, Carlo Fakhri, John Fakhri and Jason Stone - established that Capozzi threatened McGrath with a firearm.

b) According to Capozzi, trial counsel failed to object to, and appellate counsel failed to brief, "[T]he Count Two Indictment Going To The Jury." (Capozzi's Motion at p. 16). Capozzi makes no showing that his counsels' actions weren't strategic choices, that their performance was deficient, or but for their performance, the outcome would have been different. <u>Id</u>.[6]

---

[6] Capozzi's assertion "that the most highly disputed fact and central issue in the case" was the identification of and

c) Capozzi asserts his trial counsel did not object to a purportedly improper jury instruction given by the Court concerning the effect on commerce element of the Hobbs Act charge.  Motion at pp. 19-21.  As noted even by Capozzi, the First Circuit approved the language in the jury instruction in his case (Motion at p. 21) stating: "the government must show only that the extortionate conduct created a realistic probability of a de minimus effect on interstate commerce." Capozzi, 347 F.3d 327, 335.  See also, United States v. Rodriquez-Casiano, slip op. No. 04-1037, (1st Cir. October 4, 2005) at p. 4 (same, citing Capozzi).

d) Capozzi claims Krupp did not object and appellate counsel did not argue that the trial court incorrectly instructed the jury: concerning the interstate nexus element of the felon-in-possession charge; and that the government did not have to

---

possession by him of the Ruger revolver (Cappozi's Motion at pp. 16-17) is nonsense.  As noted above, the testimony of four eyewitnesses established that Capozzi threatened Michael F. McGrath with the Ruger revolver or a gun that looked exactly like it.  Michael F. McGrath observed the gun from inches away and accurately described it at trial. The Fakhri brothers both testified they saw Capozzi point a shiny, chrome revolver at McGrath. Stone confirmed he recognized the weapon used to threaten McGrath as the Ruger .357 revolver he previously bought for Capozzi. The person who sold the gun to Capozzi, Michael A. McGrath, testified he was familiar with the gun, which he confirmed was a Ruger. Stone testified that the gun the defendant used and carried during the extortion incident was the same gun he had obtained from McGrath and provided to Capozzi.

prove that Capozzi, himself, knew that the firearm (and ammunition) had crossed state lines.  See Capozzi's Motion at pp. 21-23.  Any careful reading of the Jury charge and the charge conference shows: that the jury instructions now challenged by Capozzi were legally correct; that Krupp's objections and non-objections were strategic and well-within the wide range of reasonable professional assistance; and that the jury was, in fact, carefully and clearly (as well as correctly) instructed concerning the very issues that Capozzi raises.

        e) Capozzi claims Krupp and/or his appellate counsel were ineffective in failing to make objections concerning and/or brief, the following sentencing issues:

-- the Court's finding by a preponderance of the evidence that he committed the Beverly bank robbery;

-- the seven month upward departure;

-- purported vindictiveness on the part of the prosecutor;

-- disparity between his sentence and his co-defendant's sentence; and

-- "Attorney Kamholtz's [alleged] series of misrepresentations, manipulations, or lies".

See Capozzi's Motion at pp. 24-32.  Capozzi claims are without merit.

        Except in extraordinary circumstances (not present here),claims of non-constitutional error in the application of the Sentencing Guidelines cannot be raised in a Section 2255

13

motion.  See <u>Knight v. United States</u>, 37 F.3d 769, 773 (1st Cir. 1994); <u>United States v. Pregent</u>, 190 F.3d 279, 283-84 (4th Cir. 1999); <u>Buggs v. United States</u>, 153 F.3d 439, 443 (7th Cir. 1990). The Court was required to consider Capozzi's conduct in the Beverly Bank Robbery.  See <u>United States v. Watts</u>, 519 U.S. 148, 154-157 (1997); <u>United States v. Lombard</u>, 102 F.3d 1, 5 (1st Cir. 1996).  The Court granted a modest, seven month upward departure based upon Capozzi's repeated threats to and attempts to threaten witnesses (and others) in violation of a standing non-contact order.  At sentencing, the government filed a motion for upward departure describing seven separate, independent and sufficient grounds for upward departure. (See government's motion for upward departure).  Capozzi's assertions concerning Attorney Kamholtz and the government are false, self-serving and completely unsupported.  Finally, Capozzi makes no showing that his counsels' performance was in any way unprofessional, deficient, or that but for their performance the outcome would have been different.  <u>Strickland</u>, 466 U.S. at 694.

### IV. Capozzi's Amended Motion Is Time-Barred And Otherwise Insufficient To Entitle Him To Relief.

#### A. Capozzi's Amended Claims Are Time-Barred

In the AEDPA, Congress established a "1-year period of limitation" governing motions for collateral relief under Section 2255.  28 U.S.C. 2255 § 6.  The one year period runs, in the

14

instant case, from the date on which the judgement of conviction became final. Id. Here, the judgement became final on January 26, 2004, the date on which the Supreme Court denied Capozzi's cert. petition. See, e.g. United States v. Hicks, 283 F.3d 380, 387 (D.C. Cir. 2002); Green v. United States, 260 F.3d 78, 84 (2d Cir. 2001); Washington v. United States, 243 F.3d 1299, 1300 (11th Cir. 2001) (citing cases from five other circuits). Amended § 2255 motions filed after the one-year deadline, or other untimely supplemental filings, are time-barred unless they "relate back" to the "timely-filed original pleading." United States v. Ciampi, 2005 WL 1970060, 2 (1st Cir. 2005) applying Mayle v. Felix, ____ U.S. ____, 125 S.Ct. 2562, 2569 (2005). In order to relate back, the amendment must arise out the same "conduct, transaction, or occurrence as the claim in the initial motion." Id. Claims asserted after the one-year period are not sufficient "...simply because they relate back to the same trial, conviction or sentence as a timely filed claim." Mayle, 125 S.Ct. at 2573-2574. Otherwise the "AEDPA's limitation period would have slim significance." Id. Similarly, a §2255 motion does not relate back simply because it raises "some type of ineffective assistance in the original petition" and is later amended to "assert another ineffective assistance claim based on another entirely distinct set of attorney malfeasance." Ciampi, 2005 WL 1970060 at 3.

Here, as noted above, the one-year filing period ended on January 26, 2005. Capozzi filed his original § 2255 motion on January 25, 2005, just within the time limit. On March 16, 2005, nearly three months later, and long after the one-year filing deadline, Capozzi filed an Amended Motion.

Capozzi's amended motion is time-barred because it does not relate back to his original petition. In his original, timely-filed motion, Capozzi made four claims:

--He was coerced by counsel to not to testify;

--his lawyer was ineffective because he failed to sufficiently investigate the facts concerning the effect on interstate commerce of the charged attempted extortion;

--he was denied effective assistance of counsel because his trial attorney failed to object to, and his appellate counsel failed to brief concerning, prejudicial jury instructions; and

--he was denied effective assistance because his trial counsel failed to object to, and his appellate court failed to brief, the following sentencing issues: the Court's reliance on acquitted conduct; an upward departure for threatening witnesses; a sentencing disparity between Capozzi and his co-defendant; and alleged vindictive government behavior.

In his untimely-filed, amended motion, Capozzi makes a different claim. He asserts that the Court improperly concluded that he qualified as an armed career criminal under 18 U.S.C. § 924(e) because: counsel failed to object to, and the Court erroneously counted as predicates, certain burglary convictions; and the fact of his prior convictions, resulting in an enhanced

16

sentence, should have been submitted to a jury and proven beyond a reasonable doubt, rather than determined by the Court. See Capozzi's Amended Motion passim.

The only way in which Capozzi's Amended Motion relates back to his original Motion is that the claims in the Amended Motion concern his sentencing, and one of the arguments in the original Motion concerns his sentencing. As noted above, that is insufficient to satisfy the relation back requirement. Mayle,125 S.Ct. at 2573-74 (claims do not relate back ".. .simply because they relate back to the same trial, conviction or sentence as a timely filed claim."). More specifically, in his amended petition, Capozzi is asserting a new ground for relief --that his prior burglary convictions were erroneously used as ACCA predicates. The facts concerning that claim "differ in both time and type", Mayle, 125 S.Ct. at 2566, and "assert another ineffective assistance claim", Ciampi, at 3, than even the sentencing-related claims in Capozzi's original motion. (As noted above, the original motion claims ineffective assistance at sentencing because his counsel failed to object to, and brief concerning, the Court's reliance on acquitted conduct, the sentencing disparity between Capozzi and his co-defendant, the upward departure for threatening witnesses and alleged vindictive government behavior). Because the claims in his Amended Motion

17

do not satisfy the relation back requirement, they are time-barred.  <u>Mayle</u>, 125 S.Ct. At 2569; <u>Ciampi</u>, 2005 WL 1970060 at 2.

### B.  <u>Capozzi's Amended Claims Are Without Merit</u>

Even assuming, for the sake of argument, that the claims asserted by Capozzi in his amended motion are not time-barred, they do not entitle him to relief.  First, all of Capozzi's claims are barred by procedural default because he did not raise them on direct review.  Absent a showing of actual innocence, procedurally defaulted claims cannot be heard on the merits on collateral review unless the prisoner shows "cause" for his failure to raise them at trial and on direct appeal, and "actual prejudice" resulting from his alleged error.  <u>Frady</u>, 456 U.S. at 170; <u>Coleman</u>, 501 U.S. at 753; <u>Bousley</u>, 523 U.S. at 622.  Because he does not, and cannot, show cause and prejudice, Capozzi cannot have his claim considered unless he can demonstrate "actual innocence."  <u>Bousley</u>, 523 U.S. at 620-623.  Not only is Capozzi unable to show actual innocence, as noted above (see note 4), he has previously acknowledged his guilt.

Capozzi's first claim in his Amended Motion - that the Court improperly counted certain convictions as ACCA predicates, and that his lawyers failed to object to and brief regarding that issue - also fails on the merits.  As described in Capozzi's Presentence Report, the charging document in each of the Breaking and Entering convictions he now contests states that what he

18

broke into was a "property" (PSR ¶¶ 48 and 49), "the Peabody Glen
Nursing Home" (PSR ¶ 50), "an apartment located at 129 Lowell
Street, Peabody") (PSR ¶ 53), "the Floor Studio property in
Salem" (PSR ¶ 54), and "a residence in Marblehead" (PSR ¶ 56).
Contrary to Capozzi's assertions, that is sufficient to establish
that he broke into a building, and not a ship, vessel or vehicle,
as required for the conviction to qualify as an ACCA predicate.
Shephard v. United States, 2005 U.S. LEXIS 2205, 125 S.Ct. 1254,
1257 (2005).  Moreover, Capozzi made no objections to the
relevant portions of the PSR[7].

     Capozzi's alternative claim, that Almendarez-Torres v.
United States, 523 U.S. 224, 226-27 (1998) is no longer good law,
and, therefore, the Court could not increase his sentence based
on his prior convictions because the convictions were not proven
to a jury beyond a reasonable doubt, (see the Amended Motion at
pp. 5-11), is also without merit.  The First Circuit has stated
repeatedly, and as recently as October 21, 2005, that Almendarez-
Torres remains good law.  United States v. Arias, slip op. No.
05-1420 (1st Cir. October 21, 2005) ("We rejected the claim that
the Almendarez-Torres exception is no longer good law in United
States v. Work, 409 F.3d 484 (1st Cir. 2005) ("In the roiled wake

---

     [7] It bears noting that Capozzi has numerous convictions that
qualify as ACCA predicates.  Capozzi, himself, admits the con-
victions described in PSR ¶¶'s 51(a) and (57) already count as
ACCA predicates.  See his Amended Motion at p. 2.

of <u>Booker</u>, it remains the law that previous criminal convictions are not 'facts' that must be found by a jury and proved beyond a reasonable doubt.")).

**V.  <u>Capozzi Is Not Entitled To An Evidentiary Hearing</u>.**

Evidentiary hearings on motions are the exception, not the rule.  <u>United States v. McGill</u>, 11 F.3d at 225.  A party seeking an evidentiary hearing must carry a fairly heavy burden of demonstrating a need for special treatment.  <u>Id</u>.  The petitioner has the burden to establish, by a preponderance of the evidence, that he is entitled to an evidentiary hearing.  <u>Barrett v. United States</u>, 965 F.2d 1184, 1186 (1st Cir. 1992).

A court needn't accept a petitioner's allegations as true to the extent they are contradicted by the record, inherently incredible, or mere conclusions.  <u>Id</u>.  The court need not give weight to conclusory allegations, self-interested characterizations, discredited inventions or opprobrious epithets.  <u>McGill</u>, 11 F.3d at 225.  When a petition for habeas relief is presented to the judge who presided at the petitioner's trial, the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing.  <u>Id</u>.  Similarly, if a claim is based on facts with which the trial court is familiar, the court may make findings without an additional hearing.  <u>United States v. DiCarlo</u>, 575 F.2d 952, 954 (1st Cir. 1978),

cert. denied, 439 U.S. 834 (1978).  See also Barrett, 965 F.2d at 1186; Panzardi-Alvarez v. United States, 879 F.2d 975, 985, n.8 (1st Cir. 1989), cert. denied, 493 U.S. 1082 (1990).  No evidentiary hearing is necessary where, among other things, there is already ample evidence in the record, or the quality or duration of the district judge's contact with the petitioner lends special weight to the judge's recollection.  Dziurgot v. Luther, 897 F.2d 1222, 1226 (1st Cir. 1990).

As demonstrated above, Capozzi has not met his burden of establishing that he is entitled to an evidentiary hearing because his allegations are contradicted by the record, inherently incredible, and/or consist of conclusory allegations which are either completely unsupported by the record, or based only on self-interested characterizations in his affidavit.

### Conclusion

For the reasons stated above, Capozzi's Motion (and Amended Motion) should be denied.

                              Respectfully submitted,

                              MICHAEL J. SULLIVAN
                              United States Attorney

                        By:
                              /s/CHRISTOPHER F. BATOR
                              Assistant U.S. Attorney

                              Dated: November 4, 2005

## CERTIFICATE OF SERVICE

I, CHRISTOPHER F. BATOR, certify that I have served a copy of the above upon Derek Capozzi by first class mail.

/s/CHRISTOPHER F. BATOR
Assistant U.S. Attorney

Dated: November 4, 2005